# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **H.P. and G.Y.**

**No. 18-1117** (Hampshire County 17-JA-07 and 17-JA-12)

**FILED**

**June 12, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother A.P., by counsel David C. Fuellhart, appeals the Circuit Court of Hampshire County's October 4, 2018, order terminating her parental rights to H.P. and G.Y.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Julie A. Frazer, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in modifying the dispositional order and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On January 27, 2017, the DHHR filed an abuse and neglect petition alleging that petitioner and her boyfriend, J.Y., engaged in domestic violence in the presence of H.P. The DHHR also alleged that the parents emotionally abused H.P. by screaming in his face and calling him names. In March of 2017, the DHHR filed an amended petition to add G.Y., the newborn child of petitioner and J.Y., as an infant respondent. Also in March of 2017, the circuit court held an adjudicatory hearing and petitioner stipulated to the allegations of abuse and neglect. In April of 2017, petitioner was granted a post-adjudicatory improvement period. J.Y.'s motion for a post-adjudicatory improvement period was held in abeyance pending his completion of a psychological evaluation. His visits with the children were suspended due to his behavior, which frightened the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

children. Petitioner's counsel cautioned her that a continued relationship with J.Y. could affect her ability to be reunified with her children.

In October of 2017, the circuit court granted petitioner an extension of her post-adjudicatory improvement period. During a November of 2017 multidisciplinary team ("MDT") meeting, petitioner represented that she and J.Y. had separated. In December of 2017, the MDT approved overnight visits for petitioner and the children, as long as she obtained mattresses for the children's beds. In February of 2018, the DHHR reported that petitioner's overnight visits with the children were going well. On April 30, 2018, the circuit court held a review hearing during which the DHHR reported that it believed that petitioner and J.Y. had been deceptive about the purported termination of their relationship and that neither parent was consistently attending visitation. The DHHR further reported that petitioner lost her job and that J.Y. had not been participating in services or taking his mental health medications as prescribed.

The circuit court held dispositional hearings in May and June of 2018. During these proceedings, a DHHR caseworker testified that the evening prior to the planned reunification of petitioner and the children, the worker found J.Y. living in petitioner's home. Although petitioner stated that J.Y. was there solely to drop off their dog, the DHHR worker could not remember any prior discussion of them owning a dog, nor had the worker observed a dog during any of her prior visits to the home. The DHHR worker further testified that, despite her compliance with services, petitioner's deceptions regarding her continued relationship with J.Y. indicated that the services were not successful in effectuating the changes required to safely reunite petitioner and the children. J.Y. testified on his own behalf and admitted he had not been taking prescribed mental health medications, he failed to comply with services for several months, and he did not have a job or transportation. He also admitted that he was unable to parent the children at that time. However, petitioner and J.Y. both claimed that they were no longer in a relationship. In July of 2018, the circuit court entered a dispositional order providing for a gradual transition and return of the children to petitioner. The circuit court noted, "although the [c]ourt has had some reservations, the court cannot FIND that there is no reasonable likelihood that the conditions of abuse and neglect and/or abuse can be remedied in this matter and/or substantial changes can be made in the near future." However, the circuit court terminated J.Y.'s custodial rights to the children.[2]

On August 20, 2018, the circuit court held a status hearing during which the DHHR moved to modify the dispositional order due to additional evidence that J.Y. was residing in petitioner's home. The DHHR caseworker testified that she went to petitioner's home on August 16, 2018, the evening before the children were to return home, and heard a male's voice inside the home after knocking on the door. The caseworker testified that petitioner was hesitant to let her come inside, but once let inside, the caseworker found men's pants with a Batman belt, which J.Y. was known to wear. She also found J.Y.'s wallet on the nightstand next to petitioner's bed with a current driver's license inside. The caseworker also observed freshly laundered men's boxer shorts in the living room. The caseworker testified that petitioner denied being in a relationship with J.Y. just days before the status hearing. However, the DHHR also presented testimony from J.Y.'s mother who stated that J.Y. lived with petitioner, that she took food to them at petitioner's home multiple times, and that she picked J.Y. up from medical appointments and returned him to petitioner's

---

[2]The circuit court later terminated J.Y.'s parental rights on January 11, 2019.

home. J.Y.'s mother testified that she believed that J.Y. had always lived in petitioner's home. At the conclusion of the hearing, the circuit court suspended the previously ordered reunification and scheduled the matter for further hearing on the DHHR's motion to modify the dispositional order.

On September 10, 2018, the circuit court held a further hearing on the matter. Petitioner testified that the male voice that the caseworker heard on August 16, 2018, must have been a neighbor, that the wallet the caseworker found was old, and that the belt had been in storage and she recently unpacked it. She further testified that she and J.Y. were not in a relationship. On cross-examination, petitioner admitted that she understood she could not continue her relationship with J.Y. and that continuing such relationship could jeopardize her parental rights. J.Y. testified that he was not in a relationship with petitioner and that he had not been in her home. The caseworker testified that the DHHR recommended the termination of petitioner's parental rights based upon her dishonesty and failure to address the key issue of the effects of her relationship with J.Y. on her children. The caseworker further testified that despite petitioner's compliance with services during the proceedings, her behavior demonstrated that she failed to make the changes necessary to ensure the safety and well-being of the children.

On October 4, 2018, the circuit court entered an order modifying its prior dispositional order and terminating petitioner's parental rights to the children. In support of its decision, the circuit court found that petitioner's testimony regarding her relationship with J.Y. was "not truthful and was incredulous." The circuit court found that petitioner and J.Y. continued an ongoing relationship and that petitioner allowed him to stay in her home, despite having knowledge that his custodial rights were terminated. The circuit court further found that J.Y. failed to follow through with mental health treatment and other services to address the underlying issues of abuse and neglect. According to the circuit court, petitioner and J.Y. lied and misrepresented themselves in an effort to intentionally deceive the circuit court and the MDT in order to have the children reunified with them. This deception jeopardized the safety and security of the children. Further, the circuit court noted that despite her compliance with services during the proceedings, petitioner "failed to remedy the conditions and problems that led to the removal of her minor children." The circuit court found that petitioner exercised poor judgment and lacked insight as to how her behaviors and actions adversely impacted her ability to parent the children. Lastly, the circuit court noted that petitioner was unprepared for the return of the children to her home as she did not have adequate food in the home and was at risk of having the electric turned off, despite the DHHR's assistance. Ultimately, the circuit court found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the termination of petitioner's parental rights was in the children's best interests. The circuit court terminated her parental rights in its October 4, 2018, order.[3] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the

---

[3]H.P.'s father voluntarily relinquished his parental rights and G.Y.'s father's parental rights were terminated. According to respondents, the permanency plan for the children is adoption in their current foster home.

facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in modifying the dispositional order. In support, she contends that the DHHR "failed to carry its burden of clear and convincing evidence to modify the disposition." She further alleges that the DHHR's motion to modify was based on "circumstantial evidence found at the home of [petitioner] that indicated that [J.Y.] was residing in the home." Additionally, petitioner argues that the disposition should not have been modified because the "children were not fully transitioned into the home of [petitioner] . . . and no harm came to the children." Petitioner asserts that her compliance with services demonstrated that the children's best interests were served by "allowing the original disposition to remain in effect." We do not find petitioner's arguments compelling.

Pursuant to West Virginia Code § 49-4-606(a),

[u]pon a motion of . . . the [DHHR] alleging a change of circumstances requiring a different disposition, the court shall conduct a hearing pursuant to section six hundred four [§ 49-4-604] of this article and may modify a dispositional order if the court finds by clear and convincing evidence a material change of circumstances and that the modification is in the child[ren]'s best interests.

It is true that the DHHR initially failed to present sufficient evidence of petitioner and J.Y.'s ongoing relationship and petitioner's parental rights were left intact after the July of 2018 dispositional hearing. However, during the August and September of 2018 hearings on the motion to modify the dispositional order, the DHHR presented additional evidence of the relationship. A DHHR caseworker testified that petitioner and J.Y. continued their relationship and intentionally deceived the MDT and the circuit court in order to be reunified with the children. The caseworker further testified that she found several of J.Y.'s belongings in petitioner's home, which indicated that he was living in the home. J.Y.'s mother also testified that J.Y. was living in petitioner's home and stated that he had always lived in petitioner's home. Although petitioner and J.Y. testified that they were not in a relationship and that J.Y. did not live in petitioner's home, the circuit court found their testimony "not truthful and was incredulous." In regard to credibility determinations, we have held that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388,

497 S.E.2d 531, 538 (1997). Based upon the DHHR caseworker's testimony, which the circuit court found credible, the circuit court found that petitioner and J.Y. continued an ongoing relationship and that petitioner allowed him to stay in her home, despite having knowledge that his custodial rights were terminated. The circuit court previously terminated J.Y.'s custodial rights due to his failure to address mental health and domestic violence issues. The circuit court found that petitioner's continued relationship with J.Y. jeopardized the safety and security of the children. The additional evidence of petitioner's continued relationship with J.Y. constituted a material change of circumstances to justify the modification of disposition. Additionally, modification of disposition and the termination of petitioner's parental rights was necessary for the children's welfare. Based on this evidence, we find no error in the circuit court's modification of the disposition.

Petitioner also argues that the circuit court erred in terminating her parental rights because she fully complied with the terms and conditions of her improvement period. We disagree. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c) defines "no reasonable likelihood conditions of neglect or abuse can be substantially corrected" as meaning the abusing parent has "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help."

Although petitioner complied with services, the circuit court found that petitioner continued her relationship with J.Y. thereby jeopardizing the safety and security of the children. Petitioner allowed J.Y. to reside with her even after the circuit court terminated his custodial rights due to his failure to address the issues of abuse and neglect that led to the petition's filing. The circuit court found that petitioner exercised poor judgment and lacked insight as to how her behaviors and actions adversely impacted her ability to parent the children. In its final order, the circuit court noted that petitioner was unprepared for the return of the children to her home as she did not have adequate food in the home and was at risk of having the electric turned off, despite the DHHR's assistance. We have held that "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). We have also recognized "it is possible for an individual to show 'compliance with specific aspects of the case plan' while failing 'to improve . . . [the] overall attitude and approach to parenting.'" *In re Jonathan Michael D.*, 194 W. Va. 20, 27, 459 S.E.2d 131, 138 (1995) (quoting *W. Va. Dep't. of Human Serv. v. Peggy F.,* 184 W. Va. 60, 64, 399 S.E.2d 460, 464 (1990)). Therefore, despite her compliance with services, petitioner was ultimately unable to correct the issues of abuse and neglect.

Additionally, the record shows that there were periods during the proceedings when petitioner's visits with the children were inconsistent. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citing *Tiffany Marie S.*, 196 W. Va. at 228 and 237, 470 S.E.2d at

182 and 191 (1996); *State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 259, 470 S.E.2d 205, 213 (1996)). Moreover, at the time of the final hearing, the children had been in foster care for nineteen months and were in need of permanency. Based on this evidence, it is clear that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that the termination of her parental rights was necessary for the children's welfare.

While petitioner argues that the circuit court should have granted her a less-restrictive dispositional alternative, such as temporary legal guardianship pursuant to West Virginia Code § 49-4-604(b)(5), we have held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Therefore, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 4, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: June 12, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison